| UNITED STATES DISTRICT COURT | SOUTHERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, § § § Plaintiff, § *versus* § § WC&M ENTERPRISES, INC., § § Defendant. § | CIVIL ACTION H-04-3372 |

# Opinion on Summary Judgment

1. *Introduction.*

A man says that he was harassed because of his religion and national origin, causing his work performance to suffer. His employer denies that this happened and has moved for summary judgment. It will prevail.

2. *Background.*

WC&M Enterprises, Inc., operates as Streater-Smith Honda, a car dealership. In May 2001, it hired Mohommed Rafiq as a new-car salesman. It fired him seventeen months later in late October 2002.

Rafiq is a Muslim from India. He says that, after the attacks on September 11, 2001, his coworkers and supervisors harassed him because of his national origin and religion. He says that this so rattled him that it made him lose sales.

The Equal Employment Opportunity Commission has sued on behalf of Rafiq. It does not sue for wrongful termination – only for the dealership's hostile environment causing Rafiq to lose economic opportunity.

After having investigated Rafiq's claim for one year, the commission brought this suit. It included a claim based on religion and national origin. At no point has it suggested how Rafiq's having been born in India was the subject of anything.

3.   *Lost Sales.*

To prevail on its claim, the agency must show that (a) Rafiq is a member of a protected class, (b) he was harassed because of his national origin or religion, and (c) the harassment caused his employment to be adversely affected. *B.T. Jones v. Flagship Int'l.*, 793 F.2d 714, 719–20 (5th Cir. 1986).  Rafiq is clearly a member of a protected class. Even if Rafiq could have proved that the harassment occurred, he has not shown that it was so severe that it kept him from doing his job.

Rafiq argues that he lost sales because of his co-workers' hostility toward him at work. Pl.'s Compl. 4. Alhough he could not identify the months when he sold fewer cars than he otherwise would have sold, he estimated that he lost about five or six sales each month after September 11. Depo. of Mohommed Rafiq, dkt. 22, tr. at 159–161. The record contradicts him.

Rafiq's earnings actually increased in September 2001. Dkt. 30, Ex. B. They dipped in October, but according to Rafiq, everyone's did because car sales dropped in October. Depo. of Mohommed Rafiq, dkt. 22, ex A, tr. at 159. In November, he more than doubled what he earned in October, earning more than the average. In December, he earned twice the average. From January to October 2002, his earnings were consistently and significantly higher than the average. Even Rafiq's own witness testified that Rafiq "was an above-average employee because he consistently sold 10 to 12 cars a month." Dec. of Doug Pack, dkt. 24, ex. 7.

The commission argues that this is the wrong comparison. It says that the court should look at Rafiq's earnings at the dealership where he *now* works. There, "in an environment free from the unlawful hostility which had plagued him" at Streater-Smith, Rafiq earned more than $20,000 in the first quarter of this year. Pl.'s Resp., dkt. 32, at 3. The commission says that this is more than 81.5% of his earnings at Streater-Smith for almost the entirety of 2002.

First, isolated incidents of taunting are not a plague; they are an episode. Second, the commission's arithmetic is wrong. Rafiq earned about $36,000 at Streater-Smith in 2002. If Rafiq earned $20,000 from January to March 2005, that amounts to about a little over one-half of his earnings at Streater-Smith in 2002 – not 82%.

Second, Rafiq earned about $14,000 from January to March 2002. This was right after the terrorist attacks when Rafiq has sworn that his sales were declining. The Census Bureau has reported that the volume of sales for new cars in the first three months of 2002 was less than the volume in the first quarter of 2005. U.S. Census Bureau, Service Sector Statistics, *Unadjusted and adjusted estimates of monthly retail and food services sales by kinds of business: 2002, 2005.* It is reasonable to conclude that Rafiq sold fewer in that market because demand was low. This belies his claim that harassment made his performance suffer, causing him to lose sales.

4. *"Analysis."*

   A. *Top Performers.*

From the outset of this litigation, the commission argued that Rafiq lost sales absolutely. The court told the dealership to submit a comparison of Rafiq's sales to the average of the other new-car salesmen. The commission suggested no alternative for examining the data.

When the data showed that Rafiq did not lose sales and that, in fact, his performance far outstripped that of the other salesmen on average, the commission objected. It said that the dealership's compilation of the data – the bar charts – was inadmissible hearsay. It said this despite having the same documents as the dealership. It even said that the bar charts did not correspond to "any relevant evidence." Pl.'s Mot. to Strike, dkt. 23, at 1. The charts are entirely relevant. They address the harm that Rafiq said flowed from the harassment – lost sales – and show that his assertions are objectively, patently false. The court overruled the objection.

At a hearing in late April 2005, the commission offered a new objection. This time, it said that the court should compare Rafiq not to the all the other salesmen, but only to Phil Gemmer and Matthew Kiene – salesmen who were top performers like Rafiq. Although this was not the commission's original position, the court gave the government the opportunity to present its analysis of the data and to supplement its earlier responses to the dealership's motions for summary judgment. Dkt. 31, Order dated May 25, 2005.

The commission supplemented nothing: it offered no analysis of the new-car salesmen's data and no comparison of Gemmer's, Kiene's, and Rafiq's earnings. Pl.'s

Supp., dkt. 33, at 2.  It simply (a) incorporated by reference its earlier responses, (b) dumped dozens of payroll stubs on the court without explaining their significance, and (c) said that Gemmer and Kiene were the only salespeople to have worked continuously in the same months as Rafiq.

In its earlier responses, the commission said that the court should compare Gemmer, Kiene, and Rafiq because they had similar talent *and* tenure.  Pl's Resp., dkt. 24, at 7; dkt. 29, at 4.  This argument is flawed.  Gemmer, Kiene, and Rafiq did not have similar tenure. When Streater-Smith hired Rafiq, Gemmer had worked for the dealership for over two years, Kiene for over eighteen months.  Rafiq had significantly less tenure than they did.  Neither Gemmer nor Kiene is a suitable comparator for Rafiq.

The supplement contradicted those responses.  In it, the commission said that the court should compare the men because of only their tenure:  they "were the only salespeople to have worked continuously through the same months. . . ."  Pl.'s Supp. Resp., dkt. 32, at 2.

The supplement is defective for another reason: its omissions.  Gemmer and Kiene were not the only salesmen that worked through the same months as Rafiq.  Other salesmen were at the dealership years before Rafiq arrived and remained years after he was fired.  These include: Wesley Coleman, Slavko Gligich, Thomas McCarthy, Michael Simpson, and Justin Taylor.  Def.'s Resp., dkt. 30, at 3.  Gemmer, Gligich, and Simpson are, in fact, still with the dealership.  In addition, it ignores two salesmen – Ronald Musslewhite and Doug Pack – who were at Streater-Smith when Rafiq says that the harassment was most unbearable.  Most egregious, the commission ignores Thomas Simonds, who, like Rafiq, started working in May 2001 and left in October 2002.  Although the commission disputes the data for McCarthy, Simpson, and Gligich, it has not explained why the court should not compare Rafiq to rest of these men.

Nor has the commission explained why the court should look only at sales from April through October 2002.  This omits November 2001 through March 2002, when, except for January, Rafiq's sales were greater than any other new-car salesman, including Gemmer and Kiene.  Overall, it seems that the commission has simply picked the months that best serve its purposes, without an eye to the objective truth.

B.      *Calculations.*

The commission said that the dealership erred by including Rafiq's earnings in the calculation for November 2001. It said that Streater-Smith miscalculated the averages for three of the eighteen months – November 2001 and February and June 2002. It also said that the dealership counted in its calculations the earnings of people who were salesmen but who sold no cars.

First, Streater-Smith has shown that it did not include Rafiq's earnings in the calculation for November 2001. Def.'s Reply, dkt 36, at 3. Next, the dealership recalculated the three months after excluding people who had worked less than one week. Excluding them, Rafiq still earned $4,000 more than the average. *Id.* at 4. If the dealership excludes the person who worked less than a week from the calculation for June 2002, the average for that month actually drops by $328. June 2002 was one of three months after the attacks when Rafiq earned less than the average, so dropping the new employee's sales from the calculation actually closes the gap between Rafiq's sales and the average.

Last, on the people who sold no cars, Streater-Smith explained that they were employees of the company who had taken leaves of absence. Even if the dealership should not have included them in its calculations, the burden is on *the government* to show how their exclusion would have affected the data. It did not. It merely conjectured that the data "seems incorrect." Govt. Supp., dkt. 32, at 2. It submitted dozens of payroll stubs without explaining their significance. Data dumps and supposition do not fulfill the government's responsibility to have investigated facts fully to support its claim.

Rafiq's sales record belies the claim that his work environment caused him to lose sales; his performance actually improved after the date that the agency said it began to suffer. The agency cannot establish a prima facie case for its claim, and the claim will fail.

5.      *Anguish.*

The commission seeks compensatory damages for Rafiq's anguish. The court ordered Rafiq to say what counseling he had received for it. He testified that he went to see three imams. He also said that his family life suffered, he had trouble sleeping, and the stress of his work situation affected his body. Depo. of Mohommed Rafiq, dkt. 24,

tr. at 45–46. He said that he lost thirty pounds and that he was having diarrhea. Rafiq, however, said that he did not really know if it was because of the termination. The doctor seemed to think that it was something that he ate. *Id.* at 46.

In Texas, anguish is not compensable if a plaintiff does not show that it was so severe that it interrupted his daily routine. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). Anguish must be more than worry, anxiety, vexation, embarrassment, or anger. *Id.* A plaintiff does not have to prove physical manifestation of emotional distress to recover. *Krishnan v. Sepulveda*, 916 S.W.2d 478, 482 (Tex.1995).

Rafiq did not miss work. His sales increased. He went to the emergency room only once, presumably when he had the stomach flu or food poisoning. Rafiq and his wife never separated or lived apart. Rafiq did not suffer distress so debilitating that it interrupted his daily life. Whatever anguish he may have suffered is not compensable.

6.   *National Origin.*

In his charge with Commision, Rafiq said that he had been discriminated against on the basis of his race and religion. Dkt. 28, ex. E. Curiously, the Commission sued for discrimination on the basis of national origin and religion. It has offered no evidence to support the national-origin claim.

The Commission pleaded that one of Rafiq's supervisors told him, "This is not your Islamic state or your India, where you came from." Compl., at 3. Rafiq, however, testified that the supervisor said, "This is not the Islamic country where you came from." Depo. of Mohommed Rafiq, dkt. 24, tr. at 124. Rafiq mentioned nothing about India.

Rafiq said that, after September 11th, his co-workers – of whom he said, "Everybody was my best friend" – joked and called him Taliban. Rafiq, tr. at 158, He said that his co-workers assumed that he was Arab. Rafiq said that "They didn't call me Arab. . . . So, they would – my ethnicity, they did not even know what it is." Rafiq, tr. at 177. Seconds later, Rafiq said that they called him an Arab.

None of these comments have anything to do with Rafiq's being from India. For this reason, his discrimination claim based on his national origin will fail.

7. *Filing period.*

On October 16, 2002, the dealership told its employees about a mandatory United Way meeting. Rafiq told his manager, Jerry Swigart, that making him go violated his rights. Their conversation escalated, and Swigart told Rafiq to stop acting like a "Muslim extremist." The dealership warned Rafiq in writing that day. In the warning, Swigart said that Rafiq was becoming more difficult to work with and more "militant." Rafiq complained to the commission on August 18, 2003.

A person must complain to the commission about discrimination in his employment within 300 days of an adverse action's occurrence. 42 U.S.C. § 2000e-5 (e)(1). The dealership says that the warning triggered the running of Rafiq's 300-day window. Since August 18th is 306 days after October 16th, the dealership says that Rafiq complained six days too late.

The commission responds that, even though Rafiq was reprimanded on October 16, the harassment continued until October 28 when he was fired. According to it, the 300-day window began running on the 28th. The commission is wrong.

The commission has sued for harassment – not wrongful termination. It substantiates the majority of its complaint based on the warning of October 16th – the only official act by the dealership that the commission has offered to substantiate its claim. Alhough Rafiq says that he was harassed for his twelve remaining days at the dealership, this is not enough. The commission must offer objective evidence of conduct that occurred within the 300-day filing period. Because it has not, the case will be dismissed.

The case will also be dismissed because the basis of it – the warning – is not actionable. The commission may sue only for material, conclusive, adverse employment decisions, like a termination, demotion, or pay cut. *Bland v. Browner*, 1998 U.S. Dist. LEXIS 3032, at *20 (N.D. Ill. 1998). Rafiq has suffered none of these; a disciplinary warning is insufficient.

A. *Pattern.*

Nor may Rafiq defeat limitations by arguing that the dealership's supposed conduct after the warning was part of an pattern of harassment. That theory is available

only to a plaintiff who pleads at least one act that occurred within the 300-day filing period. *Cowell v. Palmer Township*, 263 F.3d 286, 292 (3d Cir. 2001). If he does, he may rely on supporting acts occurring outside the period.

The commission tries to show a pattern of harassment by offering a disciplinary report from October 26. Pl.'s Resp., Ex. 1. That day, the author of the report who was probably the business director, Kevin Argabrite, noticed Rafiq sitting in his office instead of tending to customers. Argabite tapped the support of the glass partition instead of the glass itself, as he says was his custom. In response, Rafiq turned around and hit his fist against the glass. When Argabite confronted him, Rafiq told him, "Go away, boy."

The commission says that the report tells only one-half of the story. Rafiq testified that, whenever Argabite walked by Rafiq's office, he banged – not tapped – the glass, said "Got you," and laughed as he walked away. Rafiq complained to Richard Burgoon, the general sales manager. Pl.'s Resp., Ex. 2, at 146–147. Rafiq also said that Argabite came up to him later, put his finger in his face, and told him, "I'm the manager, and I can do whatever I feel like. You're going to listen to me. . . . I'm your manager. You work. You report to me and you don't tell me what to do and what not to do." *Id.* at 149.

Even taking Rafiq's version as true, he has not shown that the exchange was motivated by hostility toward Rafiq based on his origin or religion. It is not harassment for a manager to tell employees to work. It is also not harassment for a manager to tell an employee that he will tolerate no further insubordination. Either version has to do with Rafiq's performance, not his religion.

Last, Rafiq has offered no evidence that Argabite did not tap on the partition of other salesmen, too. At first, he testified that he did not know if Argabite tapped on other partitions. When pressed, he said, yes, he was the only one to whom Argabite did this. Depo. of Mohommed Rafiq, dkt. 24, tr. at 144–145. These contradictory accounts establish no fact. The Commission has not shown that Argabite singled out Rafiq – either because of his religion or national origin.

B.     *Waiver*.

The commission argues that the dealership raised the limitations issue too late.

It says that the time to plead the defense was when the dealership answered – not when it moved for summary judgment.  It maintains this view despite the court's allowing the dealership to amend its motion to include the limitations issue.

Generally, defendants should avail themselves of affirmative defenses early in litigation. Regardless, at whatever point, the court may permit a defendant to amend its pleading to raise a defense so long as (a) amendment would help the case and (b) the other party is not prejudiced by sudden assertion of the defense.  Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1278 (3d. ed. 2004); Fed. R. Civ. P. 15(b).  In addition, the court on its own may dismiss a case for limitations regardless of the stage of litigation.  *Street v. Vose*, 936 F.2d 38, 39 (1st Cir. 1991).

Limitations help resolve this case.  In addition, the dealership's raising the defense now does not prejudice the commission.  The day that Rafiq filed his charge, the commission knew the information that Streater-Smith now pleads.  Had the commission investigated Rafiq's charge even minimally, it would have learned that its complaint was time-barred.  For a year between Rafiq's charge and the commision's suit, it never bothered to do this.  Instead of doing its work responsibly, the commission sued – wasting the resources of the dealership and the public who must pay twice:  first for this court and second for the agency.

8. *Conclusion.*

Rafiq complained to the commission too late.  Even if he had not, he suffered no injury as a result of supposed harassment: his sales did not decline.  Last, the warning is not actionable.  On its motion for summary judgment, Streater-Smith will prevail, and the commission will take nothing.

Signed August 30, 2005, at Houston, Texas.

_____
Lynn N. Hughes  USDJ
United States District Judge